# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

\*\*\*

UNITED STATES OF AMERICA,

                            Plaintiff,

vs.

YARED RETTA,

                            Defendant.

Case No. 2:15–cr–9–JAD–VCF

**REPORT & RECOMMENDATION**

MOTION TO SUPPRESS (#20)

Officers Doty and Salgado were randomly running license-plate numbers in a "high-crime neighborhood" when a maroon Saturn pulled into a Walgreens' parking lot. A black male exited the car and entered the store. The officers ran the Saturn's license-plate number and discovered that the registered owner was Steven Ricks, a black male with outstanding misdemeanor traffic warrants.

The officers decided to wait for the person to return to the Saturn and confirm if he was Mr. Ricks. When the driver exited, he walked passed the Saturn and raised the officers' suspicions. One officer commanded the person to stop; the other flashed the patrol car's lights and sirens; and the person fled and discarded the Saturn's keys. One minute later, the officers arrested him in a nearby home. They learned that he was Yared Retta, a parolee who may have violated his conditions of release by consuming alcohol, and that Mr. Retta had discarded the Saturn's keys.

A six-and-a-half-hour detention ensued. A team of police officers interviewed Mr. Retta without Mirandizing him and purportedly obtained his consent to search the car. A K-9 searched the exterior of the car and purportedly "alerted" to the presence of drugs. A tow truck driver opened the car and the officers conducted a warrantless search. A gun was discovered in the car and a detective was called to obtain a seizure warrant and impound the gun as evidence.

Mr. Retta now faces charges for being a felon in possession of a firearm. He argues that the officers' conduct was unreasonable because the duration and scope of the officer's intrusion was disproportionate to the suspected offenses of operating a vehicle with outstanding misdemeanor traffic warrants and consuming alcohol in violation of a parole condition. *See* (Def.'s Closing #41) (citing *United States v. Grigg*, 498 F.3d 1070, 1080–81 (9th Cir. 2007)). The court agrees. Mr. Retta's Fourth Amendment rights were violated. Nonetheless, the court recommends against suppression. Because Mr. Retta is a parolee who discarded the Saturn's keys as he fled from the police, there was an objective basis under the Fourth Amendment to search the car without a warrant.

### I. LEGAL STANDARD

The constitutional principles at play in Mr. Retta's motion are well established. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The touchstone of the Fourth Amendment is objective reasonableness under the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). The Fourth Amendment's emphasis on objective reasonableness under the totality of the circumstances underpins four general principles that apply here.

First, a police officer must have probable cause or a warrant to effect an arrest. *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir. 2001). If a police officer has probable cause to arrest, the officer may automatically conduct a warrantless search of the person, conduct a warrantless search the person's vehicle, or impound the vehicle and conduct a warrantless inventory search. *Thorton v. United States*, 541 U.S. 615 (2004); *Colorado v. Bertine* 479 U.S. 367 (1987); *United States v. Robinson*, 414 U.S. 218 (1973).

2

Second, a police officer may stop and interview a person when the officer has reasonable suspicion that "criminal activity may be afoot" or reasonable suspicion that a person "was involved in or is wanted in connection with a completed felony." *Hensley*, 469 U.S. at 229; *Terry v. Ohio*, 392 U.S. 1, 30 (1968). However, a police officer may not stop and interview a person if the officer has reasonable suspicion that the person was involved in or is wanted in connection with a completed misdemeanor. *Grigg*, 498 F.3d at 1080–81.

Third, all searches and seizures must be a "proportional" or "balanced" response to the suspected offense. *Atwater*, 532 U.S. at 372; *Hensley*, 469 U.S. at 228. For instance, if a police officer suspects that a vehicle contains drugs, the officer must limit the search to containers in the vehicle that may contain drugs. *United States v. Ross*, 456 U.S. 789 (1982). Similarly, if a police officer stops a vehicle for a moving violation and issues a ticket, the police officer must limit the seizure to "the time reasonably required to complete the mission." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015).

Fourth, certain persons and objects have diminished protections under the Fourth Amendment. A police officer may conduct a warrantless search of a car if the officer has probable cause to believe that the car contains contraband or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 153 (1925). This exception to the warrant requirement exists because cars are mobile and may abscond before a warrant is obtained. *Id.* Similarly, a police officer may conduct a suspicionless search of a parolee and his or her home. *Samson v. California*, 547 U.S. 843, 853 (2006). This exception exists because parolees are less likely than the general population to be law abiding. *Id.*

## II. DISCUSSION

There is no dispute that Officers Doty and Salgado had reasonable suspicion to stop Mr. Retta. Initially, the officers reasonably suspected that Mr. Retta may be Mr. Ricks, who had outstanding misdemeanor traffic warrants. Then, the officers reasonably suspected that Mr. Retta may have obstructed

justice by fleeing from them. Finally, the officers reasonably suspected that Mr. Retta may have violated his conditions of release by consuming alcohol.

The parties' disagree on all subsequent events. The government contends that every action the officers took was reasonable under the totality of the circumstances. In contrast, Mr. Retta asserts that the officers' conduct was unreasonable because a six-and-a-half-hour detention and a search involving a K-9 unit, a tow truck, and a firearms detective were disproportionate to the suspected offences. *See Grigg*, 498 F.3d at 1080–81; (Def.'s Closing #41). The court agrees with Mr. Retta.

The search and seizure were disproportionate responses to offenses the officers purported to investigate (viz., operating a vehicle with outstanding misdemeanor traffic warrants, obstructing justice by flight, and consuming alcohol in violation of the conditions of release). Nonetheless, regardless of the officers' stated reasons for their conduct, there was an objective basis to search the Saturn. Mr. Retta is a parolee who fled from the police and discarded the Saturn's keys. These objective facts created a "fair probability that contraband or evidence of a crime will be found in" the Saturn. *Gates*, 462 U.S. at 238–39; *Carroll*, 267 U.S. at 153. Therefore, evidence of the gun should not be suppressed. Each step of the investigation is examined below.

**A.**

The court's analysis begins with the initial stop. The testimony presented established that Mr. Retta is a black male who lawfully parked a maroon Saturn in the Walgreens parking lot; he exited the car and entered the store. Meanwhile, Officers Doty and Salgado ran the Saturn's license-plate number and discovered that its registered owner was Steven Ricks, a black male with outstanding misdemeanor traffic warrants. When Mr. Retta exited Walgreens and Officers Doty and Salgado attempted to talk to him, Mr. Retta ran and discarded the keys. One minute later, Mr. Retta was detained within the curtilage of a home.

4

These events underpin the first question that must be resolved: did Mr. Retta's detention constitute an arrest? The court finds that an arrest occurred. During the court's evidentiary hearings, Officer Salgado testified that Mr. Retta was not free to leave and had been placed under arrest. He wore handcuffs had was placed inside the officers' patrol car. This is consistent with the police reports, which state that Mr. Retta was placed "under arrest" and "taken into custody with further incident." And, the evidence presented by both parties' shows that Mr. Retta was detained for approximately six-and-a-half hours.

Although there is no bright-line rule distinguishing a limited detention from a formal arrest, *see Pennsylvania v. Bruder*, 488 U.S. 9, 12 (1988); *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002), these facts demonstrate that Mr. Retta's freedom of movement was restrained to the same degree associated with a formal arrest. Additionally, these facts constitute an arrest as a matter of law in Nevada. *See* NEV. REV. STAT. §171.123(4) ("A person must not be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes."); *Barrios-Lomeli v. State*, 114 Nev. 779, 780, 961 P.2d 750, 751 (1998) (a detention that exceeds 60 minutes is an arrest).

Because the evidence shows that Mr. Retta was arrested, a second question arises: was it reasonable for the officers to arrest Mr. Retta under the totality of the circumstances? The court finds that it was not. A police officer must have probable cause or a warrant to effect an arrest. *Gilker*, 576 F.2d at 246. A warrantless arrest inside the home is presumptively unreasonable. *Hopkins v. Bonvicino*, 573 F.3d 752, 773 (9th Cir. 2009) (citing *Payton v. New York*, 445 U.S. 573, 587 (1980)).

When Mr. Retta was arrested, the officers had reasonable suspicion to believe that he obstructed justice or that he may have violated his conditions of release by consuming alcohol. Reasonable suspicion does not justify an arrest as a matter of law. *See Gilker*, 576 F.2d at 246; *see also United States v. Williams*, — F. Supp. — 3d No. 2:14-cr-334-RFB, 2015 WL 56049, at *5 (D. Nev. Jan. 4, 2015) (Boulware, J.) (holding that flight under Nevada's obstruction of justice statute merely creates reasonable suspicion).

The court, therefore, finds that Mr. Retta's Fourth Amendment rights were violated when he was arrested.

**B.**

This does not end the court's inquiry. The Fourth Amendment also protects persons from unreasonable searches. U.S. CONST. amend. IV. A search must be a "proportional" and "balanced" response to the suspected crime. *Rodriguez*, 135 S. Ct. at 1615. *Atwater*, 532 U.S. at 372; *Hensley*, 469 at 228. Here, the officers conducted a six-and-a-half-hours search of Mr. Retta's person and car using a K-9 unit, tow truck, and firearms detective. The court finds that the scope and duration of this search was unreasonable in light of the offences the officers purported to investigate: obstruction of justice by flight and violation of a parole condition.

In *Rodriguez v. United States*, the Supreme Court held that it was unreasonable for a police officer to extend the duration of a lawful traffic stop in order to conduct a suspicionless dog sniff of a vehicle. 135 S. Ct. at 1615. Similarly, in *United States v. Evans*, the Ninth Circuit held that it was unreasonable for a police officer to prolong a lawful traffic stop to conduct a ex-felon registration check and a dog sniff of the vehicle, which were unrelated to the basis for the initial stop. 786 F.3d 779, 781 (9th Cir. 2015).

*Rodriguez* and *Evans* are instructive here. Both stand for the proposition that a police officer may not conduct a search that is unrelated to the basis for a stop or prolong the stop beyond "the time reasonably required to complete the mission." *Rodriguez*, 135 S. Ct. at 1615; *Evans*, 786 F.3d at 786. If a detention is prolonged, the police officer must have reasonable suspicion—(i.e., he or she must be "aware of specific, articulable facts")—to extend the detention beyond the scope of the original "mission." *Evans*, 786 F.3d at 785–86.

After the officers learned that Mr. Retta was not Mr. Ricks, they predicated their search and seizure on Mr. Retta's flight and their suspicion that he may have violated his parole conditions by drinking.

6

Based on these suspicions, the officers detained Mr. Retta for six-and-a-half hours to conduct a dog sniff of the exterior of the car and call a tow truck to conduct a warrantless search of the interior of the car. These intrusions are unrelated to the purported basis for the stop and not "reasonably required to complete the [officers' stated] mission." *Rodriguez*, 135 S. Ct. at 1615. When viewed in light of the suspected offenses, these intrusions are unreasonable. *Id.*; *Evans*, 786 F.3d at 786; *see also Williams*, 2015 WL 56049, at *5 (flight under Nevada's obstruction of justice statute does not authorize an arrest).

The Ninth Circuit's decision in *United States v. Grigg* provides additional support for this finding. In *Grigg*, the Ninth Circuit examined the Supreme Court's decision in *Hensley*, and stated that *Hensley* permits a court to "consider the gravity of the [suspected] offense in balancing the interest of crime prevention and investigation against the interest in privacy and person security when a court assess the reasonableness of a *Terry* stop." 498 F.3d at 1077. Here, the officers should have limited their detention of Mr. Retta to a *Terry* stop in order to determine Mr. Retta's identity and whether he had violated his parole conditions. They did not. Instead, they effected an unlawful arrest. *See infra* § A.

Even if the officers had limited Mr. Retta's detention to a *Terry* stop, the court finds that the gravity of the suspected offences was disproportionate to the scope of duration of the search that followed. The officers repeatedly stated that they suspected Mr. Retta obstructed justice by flight or that he may have unlawfully consumed alcohol. In response, they detained Mr. Retta for six-and-a-half hours, conducted a dog sniff of the exterior of the car, and called a tow truck to conduct a warrantless search of the interior of the car. This was a disproportionate response to the suspected offenses. *See Grigg*, 498 F.3d at 1077.

## C.

In opposition, the government argues that every aspect of the search was reasonable because Mr. Retta consented to the search, the dog-sniff provided the officers with probable cause to search the vehicle, and the officers obtained a warrant to seize the firearm. The court does not find these arguments—or the

evidence presented to support them—persuasive.

First, the government failed to satisfy its "heavy burden" that Mr. Retta's consent was "freely and voluntarily given." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1327 (9th Cir. 1997). In evaluating whether consent to a search is voluntary, the court considers: (1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the individual was told he had the right not to consent; and (5) whether the individual was told that a search warrant could be obtained. *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000).

Evidence presented during the court's evidentiary hearings show that Mr. Retta was in custody, not Mirandized, and not told that a search warrant could be obtained. These three facts militate in favor of finding that his consent was invalid. *See id*. Additional facts supports this finding. Mr. Retta allegedly signed the consent form after dark while his hands were cuffed behind his back. It is unclear whether he read the form or if the form was read to him. And neither Mr. Retta nor the police officers completed the consent form by entering Mr. Retta's name on it. *See* (Gov't Ex. 3 (#42) at 6) ("I _____ having been informed of my right not to have as search made . . . .").

Second, the dog sniff did not provide the officers with probable cause to search the vehicle because the officers' purported basis for the dog sniff was insufficient. *See Rodriguez*, 135 S. Ct. at 1615; *Evans*, 786 F.3d at 786. As stated above, the officers predicated their conduct on suspicions that Mr. Retta may have obstructed justice by running or that he may have consumed alcohol in violation of his conditions of release. Conducting a dog-sniff search of the exterior of Mr. Retta's car is unrelated to these suspicions.

Even if the officers' purported basis to conduct a dog sniff were valid, the court finds that the government failed to "produce[] proof from controlled settings that [the] dog perform[ed] reliably in detecting drugs." *Florida v. Harris*, 133 S. Ct. 1050, 1058 (2013). Evidence presented during the court's

hearings established that the Las Vegas Metropolitan Police Department failed to keep adequate records. The K-9's certification document stated that the dog was not properly certified. (Mins. #41 at 10:44:25). The officer testified that this was a clerical error; but no evidence to supports this assertion.[1]

Third, the firearm warrant did not provide the officers with probable cause to search the car because the warrant was invalid. In *Franks v. Delaware*, the Supreme Court held that a warrant is invalid if the affidavit contains intentionally or recklessly false statements or misleading omissions and the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. 438 U.S. 154, 155–56 (1978). Here, the telephonic warrant application predicated probable cause on the dog sniff and the officers' suspicion that Mr. Retta may have violated his parole conditions by drinking. *See* (Gov't Ex. 3 (#42) at 9). These allegations were material to the judge's probable-cause finding. And, as discussed above, these statements were unreasonable and unreliable. Therefore, the warrant was invalid. *See Franks*, 438 U.S. at 155–56.

### D.

This brings the court to the final question: should the court apply the exclusionary rule and suppress evidence of the gun? The court finds that the exclusionary rule should not be applied. The exclusionary rule is not a "necessary corollary of the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 905–06 (1984). It is a judge-made rule that penalizes police misconduct. *Coolidge v. New Hampshire*, 403 U.S. 443, 499 (1971); *Spano v. New York*, 360 U.S. 315, 320–21 (1959) ("[T]he police must obey the law while

---

[1] This was one of many record-keeping errors. The K-9 is also purportedly certified through the California Narcotics Association. (Mins. #41 at 10:44:25). But the certification is insufficient because it does not indicate the number of vehicles searched, how many search-areas were tested, the number of diversions used, or the quantity of drugs involved in the test. (*Id*. at 10:46:17). Metro also failed to comply with its own K-9 Detail Policy Manual. There was insufficient evidence to show that Metro (1) "utilize[d] a helper to plant training aides"; (2) trained its handler on "cueing" to prevent the handler from "subconsciously direct[ing] the dog to alert"; (3) trained the dog "done on a daily basis to ensure proficiency"; or (4) regularly used "proofing training." (*Id*. at 10:41:44–10:50:30).

enforcing the law [because] life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves.").

The Supreme Court has cautioned lower courts to limit its application of the exclusionary rule to circumstances that serve the rule's purpose and cases in which there is a casual connection between the misconduct and the apprehension of evidence of a crime. *See United States v. Leon*, 468 U.S. 897, 911 (1984) (citation omitted) ("Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'"); *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (application of the rule "depends largely on the facts of each case.").

The circumstances of Mr. Retta's case do not warrant exclusion because the officers had probable cause to conduct a warrantless search of the Saturn and discover the gun. A police officer may conduct a warrantless search of a car if the officer has probable cause to believe that the car contains contraband or evidence of a crime. *Ross*, 456 U.S. at 809. Probable cause is a "fluid concept;" it permits a police officer to conduct a search if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Probable cause existed here. Shortly after Officers Doty and Salgado detained Mr. Retta, they learned that he had discarded the keys to the Saturn when he fled from them. They also learned that Mr. Retta had three prior convictions for burglary and was a parolee—a person who is "more likely to commit future criminal offenses than [an] average citizen." *Samson*, 547 U.S. 843, 844 (2006) (citing *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998)). Although the court disapproves of the extent of the officers' intrusion, the court finds that Officers Doty and Salgado had a legal basis to conduct a warrantless search of the car.

The fact that Mr. Retta was subjected to an unlawful arrest is insufficient to warrant exclusion. Mr. Retta's arrest bears no casual connection to the discovery of the gun. The officers erroneously arrested Mr. Retta because he fled from them and may have consumed alcohol in violation of his parole conditions. This unlawful restraint does not nullify the officers' objective basis to search the Saturn: Mr. Retta is a parolee who fled from the police and discarded the Saturn's keys. It would, therefore, be inappropriate to exclude evidence of the gun because of the bad arrest. *See Leon*, 468 U.S. at 911 (stating that the exclusionary rule should be applied where there is a casual connection between police misconduct and the discovery of evidence of a crime).

The fact that the officers predicated their search on Mr. Retta's alleged parole violation is also immaterial. The court's job is not to determine whether the police officers' subjective intentions were reasonable under the Fourth Amendment. *See Wren v. United States*, 517 U.S. 806, 814 (1996). "[P]olice officers are not lawyers, and must often make hurried judgments." *United States v. Underwood*, No. CR 10-863-SVW, 2011 WL 2415544, at *11 (C.D. Cal. June 16, 2011) *aff'd*, 725 F.3d 1076 (9th Cir. 2013) (citing *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)). When ruling on a motion to suppress, the court's job is to determine whether, from an objective point of view, a police officer's conduct was reasonable under the totality of the circumstances. *See Wren*, 517 U.S. at 814; *United States v. Cortez*, 449 U.S. 411, 417 (1981). A warrantless search of the Saturn was objectively reasonable here.

### III. CONCLUSION

Mr. Retta's Fourth Amendment right to be free from an unreasonable seizure was violated when he was arrested. And, his Fourth Amendment right to be free from unreasonable searches was violated when viewed in light of the offenses the police intended to investigate. However, these constitutional violations do not warrant the exclusion of evidence.

11

Police officers are not lawyers. Their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. When reviewing a motion to suppress under the Fourth Amendment, the court limits its gaze to the objective and particularized facts and considers whether the police had an objective basis for suspecting wrongdoing under the totality of the circumstances. *Arvizu*, 534 U.S. at 273. An objective basis existed here.

When Officers Doty and Salgado arrested Mr. Retta, they learned that he was a parolee and discovered that he discarded the Saturn's key when he fled from them. These objective facts created a "fair probability that contraband or evidence of a crime will be found in" the Saturn. *Gates*, 462 U.S. at 238–39. Therefore, a warrantless search of the Saturn was reasonable, *see Carroll*, 267 U.S. at 153, and Mr. Retta's motion to suppress should be denied.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Yared Retta's Motion to Suppress (#20) be DENIED.

IT IS SO RECOMMENDED.

DATED this 3rd day of September, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE